## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

SCOTT DEBRUYN;

       Plaintiff,

  vs.

RACHAEL EUBANKS, in her official
capacity as Treasurer of the State of
Michigan,

     and

DANA NESSEL, in her official
capacity as Attorney General of the
State of Michigan,

      Defendants.

Case No.

Hon.

**COMPLAINT FOR INJUNCTIVE
AND DECLARATORY RELIEF**

---

Jacquelyn Oesterblad*
joesterblad@publicjustice.net
PUBLIC JUSTICE
475 14th St., Ste. 610
Oakland, CA 94612
Telephone: (510) 622-8150

Mariam Elbakr*
melbakr@publicjustice.net
PUBLIC JUSTICE
1620 L Street NW, Suite 630
Washington, DC 20036
Telephone: (202) 797-8600

Michael Pitt (P24429)
mpitt@pittlawpc.com
Telephone: (248) 398-9800
Juliet Happy** (P88296)
jhappy@pittlawpc.com
Telephone: (248) 961-4598
PITT MCGEHEE PALMER
   BONNANI RIVERS
117 W. 4th Street, Ste. 200
Royal Oak, MI 48067

*Application for admission to the Eastern District of Michigan pending
**Application for admission to the Eastern District of Michigan forthcoming

*Attorneys for Plaintiff*

---

## COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

Plaintiff, Scott DeBruyn, by and through his counsel, brings this action against Rachael Eubanks, in her official capacity as Treasurer of the State of Michigan and Dana Nessel, in her official capacity as Attorney General of the State of Michigan and states as follows:

## INTRODUCTION

1.     Scott DeBruyn worked twenty years in manufacturing and manufacturing management at Grand Haven Stamped Products.

2.     As a result of his years of service, Mr. DeBruyn is entitled to a small pension of $376.34 per month. His interest in his pension has fully vested, and he began receiving pension payments before he was incarcerated.

3.     Since December of 2019, Mr. DeBruyn has been incarcerated at the Saginaw Correctional Facility.

4.     In addition to his pension, Mr. DeBruyn earns an income of about $30 per month from his prison work assignment as a porter.

5.     With this combined income of approximately $405 per month, Mr. DeBruyn supports his needs for phone calls, stamps, soap, other basic hygiene supplies, medication and clinic co-pays, supplemental nutrition, and all other purchases he must make in prison. He has no other significant assets and no other sources of income or financial support.

6. Mr. DeBruyn's pension cannot be alienated or assigned for any reason under ERISA. Nevertheless, Defendants initiated a proceeding in Michigan circuit court on October 24, 2025, to take his pension benefits, pursuant to the State Correctional Facility Reimbursement Act ("SCFRA").

7. Controlling precedent from the Sixth Circuit and this Court prohibits Defendants' actions to take or alienate Mr. DeBruyn's pension payments.

8. Defendants will nonetheless move forward with a final hearing on January 5, 2026, to unconstitutionally take Mr. DeBruyn's property without just compensation, alienate him from his ERISA-protected pension, and deprive him of this federal forum for the vindication of his federal rights, unless this Court first grants Mr. DeBruyn the injunctive and declaratory relief to which he is entitled.

## JURISDICTION AND VENUE

9. This case arises under 42 U.S.C. § 1983, ERISA (29 U.S.C. § 1132(a)(3)), and the United States Constitution.

10. This court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (action to redress deprivation of rights secured by the Constitution of the United States).

11. Venue is proper in this district because Mr. DeBruyn is currently incarcerated at Saginaw Correctional Facility, which is located within the district,

and he was served with notice within the district of the Defendants' intent to illegally and unconstitutionally deprive him of his property.

## PARTIES

12.    Scott DeBruyn is incarcerated at Saginaw Correctional Facility.

13.    Rachael Eubanks is the Michigan State Treasurer. She is sued in her official capacity.

14.    In her official capacity, Defendant Eubanks has served Mr. DeBruyn with notice that she intends to seek a court order directing that 90 percent of the value of his ERISA-protected pension benefits be appropriated by the state.

15.    Dana Nessel is the Michigan Attorney General. She is sued in her official capacity.

16.    In her official capacity, Defendant Nessel is authorized to enforce the SCFRA. She has initiated enforcement against Mr. DeBruyn by filing a complaint seeking a court order directing that 90 percent of the value of his ERISA-protected pension benefits be appropriated by the state.

## FACTUAL ALLEGATIONS

### Defendants Tell Mr. DeBruyn of Their Intent to Alienate His Pension

17.    On October 23, 2025, Defendants initiated an SCFRA action requesting that the Ottowa County Circuit Court "enter a final order awarding the State 90% of Defendant Scott A. Debruyn's assets." Ex. B at 6.

18.    Defendants listed Mr. DeBruyn's assets as including his "JSJ Corporation Pension," the "Savings Account at Lake Trust Credit Union" where his pension benefits are direct-deposited, and his "Prison Account." Ex. B at 4–5. Defendants concede in that complaint that "the State is unaware of any other assets belonging to or possessed by" Mr. DeBruyn. *Id.* at 4.

19.    No final order has issued in that case, which is scheduled for a hearing on January 5, 2026. Nor have Defendants entered a Proposed Order describing how, exactly, the Court should structure its order "awarding the State 90% of" Mr. DeBruyn's pension. But in the past, such orders have followed the same pattern: Defendants will (1) "procure a judgment entitling the state to 90% of the [pension] money,"  (2) "the court then orders the prisoner to inform his or her pension plan that any benefit payments should be sent to the institutional address," and (3) the received payments "are automatically deposited into the prisoner's institutional account," where they are subject to the 90 percent garnishment before the incarcerated person gains control.[1] *DaimlerChrysler Corp. v. Cox*, 447 F.3d 967, 969, 975 (6th Cir. 2006).

---

[1] In *DaimlerChrysler*, there was an additional step: If a pensioner "refuse[d] to comply [with the order to change their address], the warden of the prisoner's institution [would] send a copy of the order to the pension plan. The order serve[d] to notify the pension plan of the prisoner's institutional address." *Id.* at 969. Plaintiff does not have any reason to believe that Defendants intend to implement that method in his case.

20.     Defendants may also use the prison disciplinary system, which requires Mr. DeBruyn "to receive mail only at the correctional facility where [he is] incarcerated" and "prohibits [him] from possessing accounts at financial institutions," to coerce Mr. DeBruyn's to comply with an order to redirect his pension payments to his prison. *Id.* at 969.

**Congress Enacts the Employee Retirement Income Security Act (ERISA)**

21.     In 1974, when it passed the Employee Retirement Income Security Act (ERISA) to regulate private pension plans like Mr. DeBruyn's, Congress required that "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated."  29 U.S.C. § 1056(d)(1).

22.     The Supreme Court of the United States has said that the anti-alienation provision of ERISA reflects a "goal . . . of ensuring that 'if a worker has been promised a defined pension benefit upon retirement—and if he has fulfilled whatever conditions are required to obtain a vested benefit—he actually will receive it.'" *Patterson v. Shumate*, 504 U.S. 753, 765 (1992) (quoting *Nachman Corp. v. Pension Benefit Guaranty Corp.*, 446 U.S. 359, 375 (1980)).

23.     Elsewhere, the Supreme Court has described the anti-alienation provision as "unqualified by the statutory text" and "reflect[ing] a considered congressional policy choice, a decision to safeguard a stream of income for pensioners . . ., even if that decision prevents others from securing relief for the

6

wrongs done them. If exceptions to this policy are to be made, it is for Congress to undertake that task." *Guidry v. Sheet Metal Workers Nat. Pension Fund*, 493 U.S. 365, 376 (1990).

24.     As a result of the anti-alienation provision of ERISA, federal courts regularly shield pensioners' interest in their pensions from bankruptcy, *Patterson*, 504 U.S. at 765, garnishment, *Guidry*, 493 U.S. at 372, constructive trust, *id.*, forfeiture, *e.g., United States v. Wong*, 2024 WL 693790 (S.D.N.Y. Feb. 16, 2024), and all other means of alienating a pensioner from his pension.

25.     ERISA explicitly preempts "any and all State laws insofar as they may now or hereafter relate to" covered plans, 29 U.S.C. § 1144(a), language that the Supreme Court has described as "deliberately expansive," *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 46 (1987).

### Michigan Enacts the State Correctional Facility Reimbursement Act (SCFRA)

26.     Under Michigan's State Correctional Facility Reimbursement Act (SCFRA), incarcerated and formerly incarcerated people can be required to appropriate up to 90 percent of their assets to the state as "reimbursement" for the cost of their incarceration. Mich. Comp. Laws § 800.403–404.

27.     In the SCFRA's enforcement scheme, before any specified asset can be appropriated to the state, Defendants must "file a complaint in the circuit court for the county from which a prisoner was sentenced" to seek an order "requiring any

person, corporation, or other legal entity possessed or having custody of those assets to appropriate and apply the assets or a portion thereof toward reimbursing the state." Mich. Comp. Laws § 800.404(1), (3).

28.     The SCFRA does not create a freestanding debt that follows incarcerated people for the rest of their lives. Rather, the statute permits Defendants to seize a portion of identifiable assets "until the prisoner has been finally discharged on the sentence and is no longer under the jurisdiction of the department." Mich. Comp. Laws § 800.404(8).

29.     Moreover, the SCFRA only permits Defendants to seek orders to appropriate the assets of those incarcerated people whom Defendants have "good cause to believe [have] sufficient assets to recover not less than 10% of the estimated cost of care of the prisoner or 10% of the estimated cost of care of the prisoner for 2 years, whichever is less." Mich. Comp. Laws § 800.403.

30.     Notwithstanding the absolute language of ERISA's anti-alienation provision and the broad language of its preemption clause, Defendants claim the authority to treat ERISA-protected pensions as just another asset that the state can appropriate under the SCFRA. Defendants regularly seek and receive court orders directing pensioners to appropriate their pensions to the state.

31.    The Michigan Supreme Court has endorsed Defendants' actions, holding that "[a]n inmate's pension benefits in his account are 'assets' that are subject to the SCFRA." *State Treasurer v. Abbott,* 468 Mich. 143, 159 (2003).

### The Sixth Circuit and This Court Hold That ERISA Preempts Defendants from Seeking Orders Under SCFRA to Alienate Pension Benefits

32.    Federal courts have found otherwise. The Sixth Circuit described the Michigan Supreme Court's logic as "unpersuasive." *DaimlerChrysler*, 447 F.3d at 976.

33.    In *DaimlerChrysler*, the Sixth Circuit held that a state court order directing a pension administrator to send benefits directly to the prison where the pensioner resided was "preempted by ERISA." *Id.*

34.    The Sixth Circuit wrote:

Contrary to the reasoning of the Michigan Supreme Court, the fact that the prisoners have received their benefit payments at their "own" addresses is irrelevant to the question of alienation because (1) the prisoners did not want to receive the payments at their institutional addresses, (2) Michigan law strictly controls a prisoner's bank account and how the funds may be used, and (3) the state already effectively owned 90% of the payments even before they were received. The fact that the payments were sent to the prisoner's institutional address is therefore a mere formalism that is not dispositive of whether an alienation has occurred in the present case.

*Id.*

35.    This Court has repeatedly applied *DaimlerChrysler* and its logic to find that it is illegal for Defendants to do what they have threatened to do to Mr. DeBruyn

and his pension. *E.g., Gale v. State of Michigan and General Motors,* 556 F. Supp. 2d 689, 707 (E.D. Mich. 2008) ("[T]he specific orders in this case were actions initiated by the Attorney General under SCFRA for the specific purpose of obtaining an allocation to the State of up to 90% of the inmates' pension benefits. The state court then ordered the inmate to instruct his Pension Plan to pay benefits into his prison accounts, under the control of the State, to satisfy the state court's award. . . . From start to finish, then, the proceedings under SCFRA were directed in substance toward a court-ordered redirection of the inmate's pension benefits by the pension plan to the state. That result is prohibited by ERISA's anti-alienation provision."); *State Treasurer v. Bedwell*, No. 05-CV-74195-DT, 2006 WL 2125460 (E.D. Mich. July 27, 2006) ("This Court has held that to the extent the [State Treasurer] seeks to compel [the re-assignment of pension plan benefits to the pensioner's prison account], SCFRA is preempted by ERISA under 28 U.S.C. § 1144 and violates ERISA's anti-alienation provision under 29 U.S.C. § 1056(d)(1)."). Undeterred, Defendants continue to seize pensions under SCFRA.

### Defendants Continue to Illegally Alienate Pensions Under SCFRA Because Most Pensioners are Unable to Secure Their Rights

36.     Since *DaimlerChrysler*, pensioners have repeatedly sought protection from the federal courts. But because SCFRA proceedings cannot be removed to federal court, *e.g.*, *Michigan Dep't of Treasury v. Michalec*, 181 F. Supp. 2d 731, 735 (E.D. Mich. 2002), and because waiting until the conclusion of an SCFRA

proceeding results in the loss of federal jurisdiction, *Abbott v. Michigan*, 474 F.3d 324, 330 (6th Cir. 2007), no pensioner affected by Defendants' illegal conduct has yet been successful.

37. This Court and the Sixth Circuit have expressed concern about the procedural hurdles that serve to deprive affected pensioners—who are almost always low-income and currently incarcerated—of their property and ERISA rights. *State Treasurer v. Gonzalez*, 2015 WL 13049117 at * 9 (E.D. Mich. Oct. 9, 2015) (noting that "how a prisoner subject to a SCFRA proceeding can challenge that proceeding in federal court under *DaimlerChrysler*" is a "key question that remains open"); *Robbennolt v. Washington*, 626 F. App'x 155, 157–58 (6th Cir. 2015) (observing that, while incarcerated people "may well be correct that ERISA's anti-alienation provision … should prohibit Michigan from obtaining state-court orders forcing prisoners to receive pension benefits at their prison addresses," once "the state court [has] issued such an order … we must leave it undisturbed").

38. Defendants, on the other hand, have taken advantage of incarcerated pensioners' widespread inability to access federal courts to continue to pursue their illegal scheme of taking money from pensioners.

### Defendants Illegally Target Mr. DeBruyn to Directly Alienate or Coerce Him to Alienate His Protected Pension Benefits

39.    Despite clear and controlling precedent from this Court, Defendants intend to take Mr. DeBruyn's property without just compensation and in violation of ERISA on January 5, 2026.

40.    Defendants have sought a court order, to be issued on January 5, compelling Mr. DeBruyn to redirect his pension payments to Saginaw Correctional Facility despite the fact that he does "not want to receive the payments at [his] institutional address[]." *DaimlerChrysler*, 447 F.3d at 976.

41.    If Mr. DeBruyn exercises his rights under ERISA and declines to redirect his pension payments in accord with the state circuit court order, he will be punished.

42.    Indeed, the SCFRA gives Michigan's parole board explicit authority to consider "[t]he failure of a prisoner to fully cooperate" with SCFRA when making a parole determination. Mich. Comp. Laws § 800.403(a).

43.    In this way, Defendants seek to alienate Mr. DeBruyn's pension benefits or, if that fails, to coerce him into cooperating with their alienation of his benefits. But Defendants cannot lawfully punish Mr. DeBruyn for exercising his right under ERISA to receive a protected pension payment.

44.    Mr. DeBruyn's prison trust account and credit union account have already been subject to an *ex parte* "order to freeze" on the presumption that those

assets, because they derive almost entirely from his pension benefits, will be alienated to the State on January 5. *See* Ex. A at 2; Mich. Comp. Laws § 800.404(a).

45.    Because of this freeze on his prison trust account, Mr. DeBruyn cannot currently make any purchases or calls. And because of the freeze on his checking account, Mr. DeBruyn has been deprived of access to his November pension check.

46.    Defendants have also sought a court order against Mr. DeBruyn's sister, Linda Casemier, to alienate Mr. DeBruyn's pension benefits.

47.    Ms. Casemier holds power of attorney to manage Mr. DeBruyn's affairs while he is incarcerated. Any order against Mr. DeBruyn's Agent as to a financial asset of Mr. DeBruyn's, including his pension, is an order against him.

48.    In any case, "a government official cannot do indirectly what she is barred from doing directly: A government official cannot coerce a private party to [violate the law or constitution] on her behalf." *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 190 (2024). Because Defendants cannot lawfully alienate Mr. DeBruyn's pension benefits, neither can they order Ms. Casemier to do so on their behalf.

**Defendants Illegally Target Mr. DeBruyn's Credit Union Account**

49.    Defendants also seek a court order to encumber Mr. DeBruyn's credit union account.

50.     Mr. DeBruyn's pension benefits are not intermingled with any other assets. The only deposits that have been made to the credit union account since he was incarcerated have been made by his pension administrator.

51.     Insofar as Defendants seek to encumber Mr. DeBruyn's credit union account on a *prospective* basis, their actions are conclusively illegal under *DaimlerChrysler* because such an order would have the same impermissible effect as an order redirecting the pension payments— "the state [would] already effectively own[] 90% of the payments even before they were received." 447 F.3d at 976. Defendants cannot legally take any action now that would automatically assign them an interest in as-yet-unpaid pension benefits.

52.     Insofar as the Defendants seek to encumber Mr. DeBruyn's credit union account retroactively, taking 90 percent of its current holdings, ERISA also forbids their actions. In *DaimlerChrysler*, the Sixth Circuit drew a distinction between alienating pension benefits before they are paid, by ordering a pensioner or pension administrator to redirect the payments to a prison, and encumbering "already-paid funds." 447 F.3d at 976. But that distinction came from the Court's precedent "find[ing] the Tenth Circuit's reasoning persuasive" in *Guidry v. Sheet Metal Workers Nat. Pension Fund*, 39 F.3d 1078, 1082–83 (10th Cir. 1994) (en banc decision after remand from the U.S. Supreme Court). *Cent. States, Se. & Sw. Areas Pension Fund v. Howell*, 227 F.3d 672, 678 (6th Cir. 2000). The Tenth Circuit's

reasoning, in turn, was based on its finding that the anti-alienation provision of ERISA was ambiguous and that courts should thus "give deference to reasonable agency regulations." *Guidry*, 39 F.3d at 1082.

53.    Neither *Guidry* nor the Sixth Circuit's adoption of it in *Cent. States* remains good law in the wake of *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 413 (2024). This Court must interpret ERISA's anti-alienation provision for itself.

54.    The plain text of that provision requires that "benefits provided under the plan may not be assigned or alienated." 29 U.S.C. § 1056(d)(1).

55.    The text does not limit this requirement to the moment of disbursal, nor would such a limitation comport with the broad manner in which the U.S. Supreme Court has traditionally read the provision.

56.    Indeed, while few courts have had an opportunity to expressly interpret ERISA's anti-alienation provision since *Loper Bright*, at least one has expressed the view that allowing "the Government [to] forfeit[] the [pension] assets 'after' they have been disbursed" would "undermine" or be "at odds with the Supreme Court's broad reading" of the anti-alienation provision. *Wong*, 2024 WL 693790 at *3.

57.    At least here, where the contents of Mr. DeBruyn's credit union account can be wholly traced to his ERISA-protected pension payments, any alienation of the contents of that account would also constitute alienation of "benefits provided under [an ERISA] plan." 29 U.S.C. § 1056(d)(1).

## CLAIMS FOR RELIEF

### COUNT I
### Takings Clause of the Fifth Amendment
### (42 U.S.C. § 1983)

58.    Plaintiff incorporates by reference the allegations of fact set forth in paragraphs 1–57.

59.    The Fifth Amendment to the United States Constitution, as applicable to the states through the Fourteenth Amendment, prohibits the taking of private property for public use without just compensation.

60.    Defendants have announced their intent to physically take Mr. DeBruyn's property on January 5, 2026. The SCFRA gives Defendants final authority to complete the taking on January 5, and the Supreme Court has held that a regulation or law that "grants a formal entitlement to physically invade" property is sufficient to create a taking. *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 162 (2021).

61.    Defendants will not provide just compensation to Mr. DeBruyn, and no provision exists for him to obtain it after the fact.

62.    Mr. DeBruyn is therefore entitled to injunctive relief preventing the taking and preventing a preclude his receiving just compensation. *See Knick v. Twp. of Scott, Pennsylvania*, 588 U.S. 180, 185 (2019).

## COUNT II
## Alienation of ERISA Benefits
## (29 U.S.C. § 1132(a)(3))

63.     Plaintiff incorporates by reference the allegations of fact set forth in paragraphs 1–57.

64.     ERISA requires that "benefits provided under [ERISA-governed plans] may not be assigned or alienated." 29 U.S.C. § 1056(d)(1).

65.     Mr. DeBruyn's pension plan is regulated by ERISA.

66.     Defendants seek to alienate Mr. DeBruyn from his pension benefits, both prospectively and after the benefits have been distributed to him. Defendants seek to do this by compelling or coercing Mr. DeBruyn to redirect his pension payments directly to Saginaw Correctional Facility or the State, by compelling or coercing his Agent to redirect his pension payments or pension proceeds to Saginaw Correctional Facility or the State, and by encumbering the credit union account where his pension payments and pension proceeds are received.

67.     Each of these actions, separately, represents an alienation or assignation of benefits as those terms are meant by ERISA.

68.     ERISA provides a cause of action for beneficiaries like Mr. DeBruyn "to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3).

17

## COUNT III
### Supremacy Clause
**(U.S. Const. Art. VI Cl. 2; *Ex Parte Young*)**

69.     Plaintiff incorporates by reference the allegations of fact set forth in paragraphs 1–57.

70.     Article VI Clause 2 of the United States Constitution provides that "the Laws of the United States . . . shall be the supreme Law of the Land."

71.     In *Ex Parte Young*, 209 U.S. 123 (1908), the Supreme Court held that the Supremacy Clause permits federal courts to use their equitable powers to enjoin state actors from enforcing preempted state laws.

72.     Insofar as the SCFRA permits Defendants to assign, alienate, or otherwise encumber Mr. DeBruyn's pension benefits, it is preempted by ERISA. Defendants' attempts to enforce the SCFRA's preempted provisions violates the Supremacy Clause.

73.     Mr. DeBruyn is entitled to injunctive relief to prevent the irreparable harm he will suffer from Defendants' unconstitutional enforcement of a preempted state law.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for judgment against Defendants as follows:

A.      A preliminary and permanent injunction prohibiting Defendants from seeking or securing a court order to alienate, appropriate, garnish, redirect, or take in any other way Mr. DeBruyn's pension benefits or the proceeds thereof;

B.      A preliminary and permanent injunction prohibiting Defendants from treating, in any way, Mr. DeBruyn's pension benefits or the proceeds thereof as an "asset" under the SCFRA;

C.      A declaratory judgment that the SCFRA is preempted as to Mr. DeBruyn's pension payments and the proceeds thereof, and that Defendants' actions to assess ERISA-protected pension payments as "assets" under the SCFRA are unlawful;

D.      An award to Plaintiff of costs and attorneys' fees pursuant to 42 U.S.C. § 1988(b) and 29 U.S.C. §1132(g)(1); and

E.      Any such other relief the Court deems necessary and proper.

Respectfully submitted,

*s/ Jacquelyn Oesterblad*
Jacquelyn Oesterblad*
joesterblad@publicjustice.net
PUBLIC JUSTICE
475 14th St., Ste. 610
Oakland, CA 94612
Telephone: (510) 622-8150

*s/Mariam Elbakr*
Mariam Elbakr*
melbakr@publicjustice.net
PUBLIC JUSTICE

*s/ Michael Pitt*
Michael Pitt (P24429)
mpitt@pittlawpc.com
Telephone: (248) 398-9800
*s/ Juliet Happy*
Juliet Happy** (P24429)
jhappy@pittlawpc.com
Telephone: (248) 961-4598
PITT MCGEHEE PALMER BONNANI
    RIVERS
117 W. 4th Street, Ste. 200
Royal Oak, MI 48067

1620 L Street NW, Suite 630
Washington, DC 20036
Telephone: (202) 797-8600

*Application for admission to the Eastern District of Michigan pending*
**Application for admission to the Eastern District of Michigan forthcoming*

Dated: December 17, 2025